IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-01977-PAB-NYW

ALEXANDER GARCIA,

    Plaintiff,

v.

ADAMS COUNTY, COLORADO, a government entity,
SHERIFF MICHAEL MCINTOSH, in his official and individual capacity,
PHIL WAKEN, Adams County Sheriffs Sergeant, in his individual capacity,
CHRISTOPHER LONG, Adams County Sheriffs Deputy, in his individual capacity,
SCOTT DOW, Adams County Sheriffs Deputy, in his individual capacity,
COOPER CRAMBLET, Adams County Sheriffs Deputy, in his individual capacity,
CYNTHIA HILL, Adams County Sheriffs Deputy, in her individual capacity,
KYLE SWING, Adams County Sheriffs Deputy, in his individual capacity
MATTHEW MARQUEZ, Adams County Sheriffs Detective, in his individual capacity, and
ROBERT HANNAH, Adams County Sheriffs Sergeant, in his/her individual capacity,

    Defendants.

## ORDER

This matter is before the Court on Defendants "Adams County Colorado," Sheriff Michael McIntosh, and Detective Matthew Marquez' Motion to Dismiss Plaintiff's Amended Complaint [Docket No. 32]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND[1]

This suit arises from the alleged unreasonable use of force against and

---

[1] The facts below are taken from plaintiff's amended complaint, Docket No. 31, and are presumed to be true for purposes of the motion to dismiss.

malicious prosecution of plaintiff Alexander Garcia by employees of the Adams County Sheriff's Office. Docket No. 31.

Beginning on April 13, 2015, plaintiff was held on pre-trial matters at the Adams County Detention Facility, which is operated by the Adams County Sheriff's Office. Docket No. 31 at 2-3, ¶¶ 2, 13.[2] Plaintiff alleges that he was twice subjected to unreasonable use of force while held at the detention facility. *Id*. at 3, ¶ 14.

The first incident occurred on May 27, 2015. Docket No. 31 at 4, ¶ 15. While sitting in his wheelchair in the sally port in the B Module of the detention facility, plaintiff asked to see the facility's mental health staff. *Id*., ¶ 17-18. Plaintiff spoke first with defendant Deputy Scott Dow and second with Deputy Christopher Long. *Id*., ¶ 18. While plaintiff had his hands in his lap holding some papers, Deputy Long struck plaintiff in the left side of his neck, grabbed plaintiff's left arm, and pulled plaintiff out of his wheelchair. *Id*., ¶ 19-20. Deputy Dow and Deputy Cooper Cramblet also grabbed plaintiff and helped Deputy Long force him to the ground. *Id*., ¶ 21. The assault dislocated plaintiff's knee. Docket No. 31 at 5, ¶¶ 23-24. Additional deputies arrived at the sally port. *Id*. at 4, ¶ 22. Two of them threatened to Taser plaintiff. *Id*. at 5, ¶ 23. Plaintiff's hands were cuffed behind his back and he was carried away by his limbs to a holding cell. *Id*., ¶ 24. The events to this point were captured on surveillance video. *Id*. at 4, ¶ 16.

At the holding cell, Sergeant Phil Waken ordered that plaintiff's handcuffs remain

---

[2] The amended complaint refers to the "Adams County Sheriff's Department," but, in their motion papers, the parties refer instead to the "Adams County Sheriff's Office," which the Court will use.

on and that plaintiff be left lying on the floor on his stomach. Docket No. 31 at 5, ¶ 25. Plaintiff was left in this position for approximately two hours and forty minutes, during which time he urinated on himself and suffered further injury due to the tightness of the handcuffs. *Id*., ¶ 26.

On May 28, 2015, in relation to the previous day's events, defendant Detective Matthew Marquez completed an affidavit in support of plaintiff's arrest on two counts of Second Degree Assault on a Police Officer in violation of Colo. Rev. Stat. §§ 18-3-203(1)(f) and 18-3-203(1)(c). Docket No. 31 at 6-7, ¶¶ 36, 40. Detective Marquez stated under oath that he reviewed the surveillance video and supplemental reports available to him before submitting the affidavit. *Id*. at 8, ¶ 43. The affidavit is inconsistent with the video and incorrectly states that Deputy Long was attempting to place handcuffs on plaintiff and that plaintiff punched Deputy Long in the face three times. *Id*. at 7-8, ¶ 41. For the most part, Detective Marquez' affidavit consists of one paragraph copied from the supplemental report of Deputy Dow. *Id*. at 7, ¶ 40. The district attorney relied on Detective Marquez' affidavit in charging plaintiff with assault on the prison officials. *Id*. at 6-8, ¶¶ 34, 42. On February 23, 2016, the charges against plaintiff were dismissed. Docket No. 31 at 8, ¶ 45.

The second assault on plaintiff occurred on October 29, 2015 in the B Module sally port. Docket No. 31 at 5, ¶ 29. Deputy Cynthia Hill yelled for the inmates in the sally port to "shut the fuck up" and, when plaintiff admittedly failed to do so, she punched plaintiff in the arm. *Id*. at 6, ¶¶ 30-31. Deputy Hill, with help from Deputy Kyle

Swing and Sergeant Robert Hannah, then slammed plaintiff against the wall, which hurt plaintiff's still-injured knee. *Id*., ¶ 32.

On August 3, 2016, plaintiff filed his complaint. Docket No. 1. Plaintiff brings claims under 42 U.S.C. § 1983 against the deputies for unreasonable use of force and against Detective Marquez for malicious prosecution. Docket No. 31 at 10-12. Plaintiff also brings § 1983 claims against Sheriff Michael McIntosh and Adams County for municipal and supervisory liability under the theory that the sheriff's deputies were improperly hired, trained, and supervised. *Id*. at 12-14. On February 7, 2017, defendants Marquez, McIntosh, and Adams County filed their motion to dismiss, requesting that the Court dismiss all of plaintiff's malicious prosecution and supervisory liability claims under Fed. R. Civ. P. 12(b)(6) for failing to state a claim on which relief can be granted. Docket No. 32 at 1-2.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the

material elements necessary to sustain a recovery under some viable legal theory." *Bryson,* 534 F.3d at 1286 (alteration marks omitted).

## III. ANALYSIS

### A. Supervisory Liability and Municipal Liability Claims

Local governments may not be sued under 42 U.S.C. § 1983 on a theory of respondeat superior. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 692 (1978). Instead, local governing bodies can be sued directly only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690 (footnote omitted). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

In order to state a claim for municipal liability under § 1983 for the actions of a municipal employee, a party must allege sufficient facts to demonstrate that it is plausible "(1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). The plaintiff must further show that "the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that

its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (citation omitted). Thus, in order to state a claim under § 1983 for deliberate indifference based on a policy or practice, plaintiffs must allege "(1) official policy or custom, (2) causation, and (3) state of mind." *Schneider*, 717 F.3d at 769.

Where the theory for recovery rests on a failure to train or supervise employees, a plaintiff "must demonstrate an affirmative link between the supervisor and the violation" by showing "(1) personal involvement; (2) sufficient causal connection, and (3) culpable state of mind." *Schneider*, 717 F.3d at 767 (internal quotation marks omitted). In order to establish a culpable state of mind, a plaintiff has the burden to show that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)); *Brown v. Gray*, 227 F.3d 1278, 1291 (10th Cir. 2000) (applying the same standard to inadequate supervision).

### 1. Claim Against Sheriff McIntosh (Sixth Claim)

#### a. Inadequate Supervision and Training

Defendants argue that plaintiff's inadequate supervision and training allegations are conclusory. Docket No. 32 at 9-11. In particular, defendants argue that "Plaintiff does not meaningfully identify or describe an express policy or specific custom which

purportedly was the cause of the alleged misconduct. Rather, Plaintiff relies on general allegations regarding [a] lack of proper standards." *Id*. at 8; *see also id*. at 11. Defendants further argue that the amended complaint lacks allegations from which one could infer that Sheriff McIntosh acted with the requisite mental state of deliberate indifference to likely constitutional violations. *Id*. at 10.

Plaintiff responds that Sheriff McIntosh had a responsibility to supervise his deputies pursuant to Colo. Rev. Stat. § 17-26-102 and that he sets policy for the Sheriff's Office. Docket No. 36 at 8-9.[3] Plaintiff further argues that he has sufficiently alleged that Sheriff McIntosh created unconstitutional policies and unconstitutionally deficient training that caused plaintiff's injuries and that the sheriff should have been aware that such violations were likely. *Id*. at 10.

Plaintiff's reliance on Sheriff's McIntosh's statutory responsibilities is untenable as a theory of liability for § 1983 claims. Theories of vicarious liability, including respondeat superior, are inapplicable to § 1983 claims, which impose liability only on those who personally caused a constitutional violation or created a policy that caused such a violation. *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) (citing *Monell*, 436 U.S. at 694). Nowhere in plaintiff's argument does he identify any specific policies or failures to train. *See Aguilar v. Colorado State Penitentiary*, 656 F. App'x 400, 403 (10th Cir. 2016) (unpublished) ("[T]o hold the entity liable, the plaintiff must identify an official policy or a custom that is the 'direct cause' or 'moving force' behind the

---

[3] Plaintiff also notes that the prison officials involved were not disciplined. Docket No. 26 at 8. As defendants point out, such a single post-violation incident is not probative that a policy caused the violation. Docket No. 32 at 8 (citing *Durkee v. Minor*, 841 F.3d 872, 877 (10th Cir. 2016))

7

constitutional violations." (quoting *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1215 (10th Cir. 2003)). Identifying a specific policy is necessary because, in the § 1983 context, it is impermissible to infer from a singe incident of excessive force, regardless of its severity, that a constitutional violation was attributable to inadequate supervision or training. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821 (1985). Here, plaintiff's allegations generally consist of conclusory allegations and are unsupported by specific factual allegations, aside from those in relation to the incidents involving plaintiff. Characteristic of such allegations is paragraph 51 of the amended complaint:

> These deficiencies [in hiring, training, supervision, and discipline] existed at all relevant times – including well before May 27, 2015 – and are exemplified by the following: the failure to implement proper standards relating to the hiring of [Sheriff's Office] employees, the failure to utilize appropriate training methodology with respect to [Sheriff's Office] employees (such as sufficiently regular stress inoculation training), the failure to require [Sheriff's Office] employees to timely, accurately, or truthfully report their on-the-job conduct, the failure to properly investigate allegations of misconduct against [Sheriff's Office] employees, the failure to require [Sheriff's Office] employees to preserve evidence relating to allegations of [Sheriff's Office] misconduct, and the failure to suitably discipline [Sheriff's Office] employees who engaged in misconduct, including but not limited to uses of force against individuals.

Docket No. 31 at 9-10, ¶ 51. There is one specific factual allegation buried in the list of legal conclusions that plaintiff does not mention in his argument – that Sheriff's Office's training was deficient for failing to provide "sufficiently regular stress inoculation training." *Id*. That allegation is potentially relevant to plaintiff's claims. The surveillance video shows that Deputy Long became increasingly agitated as he argued with plaintiff, who backs away in his wheelchair, until Deputy Long approached and pointed sharply at plaintiff before striking plaintiff. *See* Docket No. 4. Plaintiff's allegations and the video support an inference that a failure to provide Deputy Long training in stress

8

management led to the first incident. Nonetheless, a specific alleged training deficiency alone is insufficient to state a claim because plaintiff must also allege facts showing Sheriff McIntosh acted with a deliberately indifferent state of mind. *See Schneider*, 717 F.3d at 767. Plaintiff, however, makes no specific factual allegations from which a factfinder could infer a deliberately indifferent decision not to provide stress inoculation training. For example, there are no factual allegations that the "inadequacies [in training] resulted from conscious choice" or allegations that support a conclusion that the "policymakers deliberately chose a training program which would prove inadequate." *City of Oklahoma City*, 471 U.S. at 823 (1985). Instead, plaintiff alleges in conclusory fashion that Sheriff McIntosh "had actual or constructive notice . . . that [the Sheriff's Office's] deficient customs, practices, and actual policies were substantially certain to result in constitutional violations." Docket No. 31 at 10, ¶ 52. Such allegations, which merely state legal conclusions, do not warrant a presumption of truth and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[4] Therefore, the Court will dismiss plaintiff's sixth claim against Sheriff McIntosh insofar as it is based on inadequate supervision and training.

### b. Inadequate Hiring

Defendants also argue that the plaintiff's inadequate hiring allegations are formulaic, conclusory statements that do not state a claim. Docket No. 32 at 6-7.

---

[4] Plaintiff cites *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988), a pre-*Iqbal* case, for the proposition that its pleadings are sufficient. Docket No. 36 at 10. But the Tenth Circuit has recognized that, in the wake of *Iqbal*, the pleading standard for so-called "supervisory liability" in § 1983 cases has changed. *See Schneider*, 717 F.3d at 767.

Plaintiff does not respond to this argument.  See Docket No. 36 at 7-8.  The Court agrees with defendants that plaintiff's inadequate hiring allegations are mere "recitals of the elements of a cause of action, supported by mere conclusory statements," that do not state a cause of action.  *Iqbal*, 556 U.S. at 678.  Accordingly, the Court will dismiss plaintiff's sixth claim against Sheriff McIntosh.

### *2. Claim Against Adams County, Colorado (Fifth Claim)*

Defendants argue that Adams County, Colorado is not a proper defendant because, pursuant to Colo. Rev. Stat. § 30-11-105, the proper party is the board of county commissioners.  Docket No. 32 at 3-4; *see also Bristol v. Bd. of Cty. Comm'rs of Cty. of Clear Creek*, 312 F.3d 1213, 1219 (10th Cir. 2002) ("We agree with the Colorado Court of Appeals that '[t]he sheriff, not the county or the Board, has the right of control with respect to the deputies.'" (quoting *Tunget v. Bd. of County Comm'rs*, 992 P.2d 650, 652 (Colo. App. 2000))) (en banc).  In response, plaintiff states that he would be amenable to dismissing his claim against Adams County if the county assumed liability for the acts complained of, if proven.  Docket No. 36 at 7.[5]

Regardless of whether Adams County, Colorado is a proper defendant, plaintiff fails to state a claim against Adams County for the same reasons that he fails to state a claim against Sheriff McIntosh.  Namely, plaintiff does not allege any specific factual

---

[5] On the prior page of his brief, plaintiff quotes the holding of *Carranza Reyes v. Park Cty. Bd. of Cty. Comm'rs*, No. 05-cv-00377-WDM-BNB, 2007 WL 2381405, at *7 (D. Colo. Aug. 17, 2007), that "the Board [of county commissioners] is not a proper defendant in this [§ 1983] action [about the sheriff's office's treatment of prisoners], but that the County is liable for claims against its employees in their official capacities."  Docket No. 36 at 6.  In light of this authority, it is unclear why plaintiff was reluctant to dismiss his claim against Adams County, Colorado.

allegations that would support a finding of deliberate indifference by Adams County, and instead alleges legal conclusions regarding Adams County's policies. *See, e.g.*, Docket No. 31 at 13, ¶ 84 ("Adams County Defendants' deliberately indifferent customs, and failures to train/supervise, are all actionable policy decisions that were moving forces and proximate causes of the violation of Alex Garcia's constitutional rights."). The Court will dismiss plaintiff's claims against Adams County, Colorado.

### B. Plaintiff's Malicious Prosecution Claims (Third and Fourth Claims)

Plaintiff does not dispute defendants' argument that his third and fourth claims against Deputy Marquez are both claims for malicious prosecution. *See* Docket No. 32 at 15. Plaintiff brings these claims under the Fourth and Fourteenth Amendments. Docket No. 31 at 11-12. Plaintiff does not indicate whether he bases such claims on the Fourth Amendment as made applicable to the states through the Fourteenth Amendment or whether, in the alternative, he claims a separate basis for his malicious prosecution claim under the Fourteenth Amendment. *See United States v. Rodriguez-Rodriguez*, 550 F.3d 1223, 1225 n.1 (10th Cir. 2008) (citing *Mapp v. Ohio*, 367 U.S. 643, 655 (1961)). However, out of an abundance of caution, the Court analyzes each Amendment in turn.

#### *1. Malicious Prosecution Under the Fourth Amendment*

A claim for malicious prosecution under 42 U.S.C. § 1983 may be grounded in the rights guaranteed by the Fourth Amendment. *Wilkins v. DeReyes*, 528 F.3d 790, 797 n.4 (10th Cir. 2008). Such a claim requires a showing that "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action

terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Id*. at 799.

Defendants argue that plaintiff fails to allege that Detective Marquez' actions caused plaintiff's continued confinement or prosecution. Docket No. 32 at 14. Additionally, defendants invoke the doctrine of qualified immunity with respect to plaintiff's malicious prosecution claim. *Id*. at 15. Plaintiff does not respond to defendants' arguments, but instead argues that Detective Marquez is not entitled to move to dismiss because he answered the complaint before filing his motion. Docket No. 36 at 12. In reply, defendants point out that they raised failure to state a claim as a defense in their answer. *See* Docket No. 9 at 1.

While plaintiff is correct that defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) is improper because it was filed after Detective Marquez answered the complaint, in such circumstances courts have held that the motion should be treated as a motion for judgment on the pleadings under Rule 12(c). *See, e.g., Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 954 (9th Cir. 2004); *Patrick v. Rivera-Lopez*, 708 F.3d 15, 18 (1st Cir. 2013); *Nicks v. Brewer*, 2010 WL 4868172, at *2 (D. Kan. Nov. 23, 2010).[6] "Failure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c)." Fed. R. Civ P. 12(h)(2). "Converting the grounds for a motion from Rule 12(b)(6) to Rule 12(c) does not affect [the Court's] analysis inasmuch

---

[6] Additionally, some courts have held that where, as here, defendants had not answered an amended complaint, a Rule 12(b)(6) motion is timely. *See, e.g., Panwar v. Access Therapies, Inc.*, 975 F. Supp. 2d 948, 955 (S.D. Ind. 2013).

as the two motions are ordinarily accorded much the same treatment." *Patrick*, 708 F.3d at 18 (internal quotation marks omitted). Therefore, the Court proceeds to the issue of whether Detective Marquez is entitled to qualified immunity.

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity provides immunity from trial and the other burdens of litigation such as discovery, rather than merely a defense to liability. *See Saucier v. Katz,* 533 U.S. 194, 200 (2001), *overruled on other grounds by Pearson*, 555 U.S. 223. Therefore, a court should resolve questions of qualified immunity at the earliest possible stage of litigation. *Anderson v. Creighton,* 483 U.S. 635, 646 n.6 (1987). However, a plaintiff facing a qualified immunity challenge still does not have a heightened pleading standard. *Currier v. Doran,* 242 F.3d 905, 916-17 (10th Cir. 2001); *see id.* at 914 (although qualified immunity protects public officials "from the costs associated with defending against lawsuits, particularly baseless ones, it d[oes] not follow that a defendant's claim of qualified immunity c[an] always be resolved before at least some discovery [is] conducted.") (citing *Crawford-El v. Britton*, 523 U.S. 574, 591-93 & 593 n.14 (1998)).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800,

818 (1982). Upon a public official's assertion of a qualified immunity defense, plaintiff bears a "heavy burden" under a two-pronged analysis. *Buck v. City of Albuquerque,* 549 F.3d 1269, 1277 (10th Cir. 2008). Under the first prong of the analysis, the plaintiff is required to "establish that the defendant's actions violated a constitutional or statutory right." *Smith v. Cochran,* 339 F.3d 1205, 1211 (10th Cir. 2003) (quoting *Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179, 1185 (10th Cir. 2001)). The determination of whether a violation occurred under the first prong of the qualified immunity analysis turns on substantive law regarding that right. *See, e.g., Casey v. City of Fed. Heights,* 509 F.3d 1278, 1282-83 (10th Cir. 2007). Under the second prong, the plaintiff must show that the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Saucier v. Katz,* 533 U.S. 194, 201 (2001).

Defendants are correct that the amended complaint does not allege plaintiff was confined for any longer period than he otherwise would have been due to being charged with assault on a police officer. *See generally* Docket No. 31. Instead, plaintiff generally alleges that he was harmed by the prosecution. *See id*. at 12, ¶ 76 (alleging that, as a result of the malicious prosecution, "Plaintiff has suffered damages."). Defendants point to cases from this district where courts have concluded that there is "no clearly established law that states that an already lawfully incarcerated prisoner is seized for Fourth Amendment purposes when he is charged with an additional crime." *Turner v. Schultz*, 130 F. Supp. 2d 1216, 1225 (D. Colo. 2001); *see also Waller v. City & Cty. of Denver*, No. 14-cv-02109-WYD-NYW, 2015 WL 5302476, at *2 (D. Colo. Sept. 11, 2015) (dismissing Fourth Amendment malicious prosecution claim where the

plaintiff "was already arrested and detained on other charges throughout the duration of the malicious prosecution alleged"). Without a seizure, the Fourth Amendment is not implicated. *Becker v. Kroll*, 494 F.3d 904, 915 (10th Cir. 2007). Plaintiff does not cite, and the Court is not aware of, any clearly established law that would have put Detective Marquez on notice that he violated plaintiff's Fourth Amendment rights if his actions did not extend the period of plaintiff's incarceration. Therefore, Detective Marquez is entitled to dismissal of the malicious prosecution claim against him under the Fourth Amendment. *Turner*, 130 F. Supp. 2d at 1225.

### 2. *Malicious Prosecution Under the Fourteenth Amendment*

Assuming that plaintiff is making a malicious prosecution claim under the Fourteenth Amendment, that claim also fails. Controlling Tenth Circuit precedent establishes that, "where a law enforcement officer is alleged to have falsified the facts in support of an arrest warrant and subsequent prosecution, '[s]uch lawlessness could not have been anticipated or prevented pre-deprivation, but a post-deprivation malicious-prosecution claim serves as an effective antidote. Colorado law provides that remedy.'" *Rodriguez v. Chavez*, No. 12-cv-01071-PAB-MJW, 2015 WL 5174226, at *12 (D. Colo. Sept. 3, 2015) (quoting *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013)). Because there is an adequate state law tort remedy, due process is satisfied, and plaintiff cannot sustain any § 1983 malicious prosecution claim based on the Fourteenth Amendment. *Myers*, 738 F.3d at 1193. Accordingly, the Court will dismiss plaintiff's claims against Detective Marquez.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants "Adams County Colorado," Sheriff Michael McIntosh, and Detective Matthew Marquez' Motion to Dismiss Plaintiff's Amended Complaint [Docket No. 32] is **GRANTED**. It is further

**ORDERED** that plaintiff's third, fourth, fifth, and sixth claims for relief are dismissed without prejudice. It is further

**ORDERED** that defendants Adams County, Colorado, Sheriff Michael McIntosh, and Matthew Marquez are dismissed.

DATED September 25, 2017.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge